# THE STATE v. FEATHERSTONE POWELL, Appellant.

### Division Two, May 26, 1914.

1. **CONFESSION: Involuntary: Dependent Upon Person.** What is necessary to render a written confession involuntary, depends, to a large extent, upon the person from whom such confession is obtained. The age, sex, disposition and past experience of the confessor must necessarily be considered.

2. ———: ———: ———: **Hireling.** A colored man twenty-four years of age, who had made his living by honest work up to the time of his arrest (for seven years as a janitor at a freight depot), but had never worked for himself, and had never been arrested upon any charge, or suspected of any crime except the violation of the prohibition laws, would scarcely be expected to possess strong enough will-power to resist indefinitely the accusations and interrogations of expert detectives.

3. ———: ———: **Long Interrogation: Mental Torture.** If a man be accused, interrogated and browbeaten by officers having him in charge until his will is overcome by mental torture, his confession, thus obtained, is no less involuntary than one obtained by physical punishment.

4. ———: ———: **Promise That Confession Will Help.** The effect that the words "it will help you to tell the truth" would have on the mind of one suspected of being an accessory to a recent murder, would depend somewhat upon the stress or emphasis placed upon them by the captain of police uttering them; but when they were frequently repeated to the accused, through the several hours in which an attempt was persistently made to extort a confession from him, the natural effect of such words upon the mind of a negro twenty-four years of age who had never been previously arrested and who had for seven years been a janitor about a freight depot, and under the other circumstances of this case, would be to lead him to believe he would secure at least a partial relief from the charge, by making the confession.

5. ———: ———: ———: **Overcoloring Element of Fairness: Suspicious.** The addition of a clause to the confession, in the words, "I make this statement of my own free will, without any threats or promises being made and knowing that it will be used against me if I am prosecuted," in spite of the fact

State v. Powell.

that the captain of police to whom the confession was made testified that he repeatedly told defendant "it will help you to tell the truth," of itself looks suspicious; for it is highly improbable that such a clause would have been added if some hope had not been directly or indirectly held out to defendant that he would not be prosecuted.

6. ————: ————: **Testimony Impeaching Confession: Admissible.** Testimony tending to prove that parts of defendant's confession were not true, offered by him for the purpose of impeaching and discrediting said confession, is competent. Where the confession stated that defendant's brother was one of the active participants in the robbery, and immediately preceding its attempt in which the murder was committed requested defendant to come to the home of his mother and receive a portion of the proceeds of the robbery, testimony that said brother was not present and could not have taken part in the crime, and that said confession was to that extent untrue, was competent, not only for the purpose of showing the absence of motive on defendant's part and that he did not participate in the crime, but also for the purpose of showing said confession was not voluntarily made.

7. ————: ————: ————: **As Showing Confession Was Involuntary.** If defendant did not wish to incriminate his brother in the robbery and in the murder which grew out of it, as testified to by the officers who extorted the confession from him, and yet by his confession did involve him in that crime as an active participant, testimony that said brother was not present at the robbery would be positive evidence that the confession was not involuntary.

Appeal from Jackson Criminal Court.—*Hon. Ralph Latshaw,* Judge.

REVERSED AND REMANDED.

*Griffin & Orr* and *Horace S. Kimbrell* for appellant.

(1) Considering the fact that defendant was a colored man, twenty-three years old, his mental qualifications, his surroundings, and the fact that nine police officers were "sweating" him for nearly twelve hours, the court erred in admitting the purported confession in evidence, especially after it appeared that the police

officers had told defendant that "it would be best for him to tell the truth," and "it would help him to tell the truth." State v. Brockman, 46 Mo. 566; Underhill on Criminal Evidence, sec. 128; Wharton on Criminal Evidence, p. 1328; State v. Fredericks, 85 Mo. 145; 12 Cyc. 464. (2) The court erred in excluding the testimony of witnesses Halsey Powell, White, Ousler and Gaskill. State v. McKenzie, 144 Mo. 40; State v. Blodgett, 92 Pac. (Ore.) 820; Janes v. People, 99 Pac. (Colo.) 325; Young v. State, 68 Ala. 569; Commonwealth v. Howe, 9 Gray (Mass.), 110; Commonwealth v. Howe, 2 Allen (Mass.), 153; People v. Fox, 50 Hun. 604, 3 N. Y. Supp. 359; Wharton on Criminal Evidence, p. 1299; 3 Ency. Evd., 353; 12 Cyc. 484.

*John T. Barker*, Attorney-General, and *William M. Fitch*, Assistant Attorney-General, for the State.

(1) Confessions will be incompetent if inducements are held out by some officer or person in authority having defendant in custody, or by one who then has the defendant in actual custody. State v. Hopkirk, 84 Mo. 278; State v. Jones, 171 Mo. 401; State v. Hunter, 181 Mo. 316; State v. Hagan, 54 Mo. 192; State v. Jones, 54 Mo. 478. (2) A statement to the accused by the person having him in charge to the effect that it will be better for him to tell the truth about the matter, will not annul the confession. Hawkins v. State, 7 Mo. 190; State v. Patterson, 73 Mo. 695; State v. White, 17 Kan. 487; State v. Kornstett, 62 Kan. 221; State v. Anderson, 96 Mo. 241. (3) The fact that the defendant is in charge of an officer is no objection to a confession, if no threats were made and no promises were given defendant. State v. Wooley, 215 Mo. 683; State v. Simon, 50 Mo. 370; State v. Carlisle, 57 Mo. 102; State v. Shackleford, 148 Mo. 493; State v. Vaughn, 152 Mo. 73; State v. Barrington, 198

Mo. 23; State v. Armstrong, 203 Mo. 554; State v. Stebbins, 188 Mo. 387; State v. Church, 199 Mo. 605; State v. Brooks, 220 Mo. 74; State v. Wilson, 223 Mo. 173; State v. Green, 229 Mo. 642. (4) Confessions, elicited by questions put to the prisoner by an officer or by a private person, are admissible in evidence against the prisoner. State v. Stebbins, 188 Mo. 387; State v. Barrington, 198 Mo. 23; Com. v. Curtis, 97 Mass. 578. Such is the English rule: Rex v. Unchurch, 1 Moody, C. C. 465; Rex v. Wild, 1 Moody, C. C. 452; Rex v. Thornton, 1 Moody, C. C. 27. It is no objection that the confession is made in response to questions which assume the guilt of the defendant. State v. Barrington, 198 Mo. 23; Rex v. Thornton, 1 Moody, C. C. 27. (5) In the absence of actual promises or threats, mere threatening circumstances will not exclude the confession. State v. Armstrong, 167 Mo. 257; Rice v. State, 47 Ala. 38; State v. Ingram, 16 Kan. 14. (6) If promises or threats are made by or in the presence of one in authority or having control over the prisoner, and were such as might influence him, it is presumed that the confession afterwards made was induced by such threats or promises, unless it shall appear that their influence was totally done away with before the confession was made. State v. Jones, 54 Mo. 478; State v. Jones, 171 Mo. 401; State v. Guild, 10 N. J. L. 163. (7) Confessions secured by the following statements are held inadmissible, as against the defendant making them, viz.: ''It will be better for you to confess,'' or ''worse if you do not confess.'' Couley v. State, 12 Mo. 462; State v. Freeman, 12 Ind. 100. ''Tell me where the things are, and I will be favorable to you.'' Rex v. Hearn, Carrington & Marsh, 109. ''You had better tell me all you know.'' Rex v. Kingston, 4 Carrington & Payne, 387. ''I should be obliged to you if you could tell us all you know about it; if you will not, of course we can do nothing.'' Rex v. Partridge, 7 Carrington & Payne, 551. ''Any-

thing you can say in your defense, we shall be ready to hear." Rex v. Morton, 2 Moody & Rob. 514. (8) Statements have been held to be competent as against the person making same, (a) even though he was not warned that they would be so used. State v. Church, 199 Mo. 605; Rex v. Richards, 5 Char. & Payne, 318. (b) Even though they were secured by artifice. State v. Phelps, 74 Mo. 128; State v. Brooks, 92 Mo. 542. (c). And where such statements are secured by representing to him that his accomplices are in custody, or that they have divulged the crime, and yet the statements be competent as against the defendant making them. State v. Jones, 54 Mo. 478; State v. Phelps, 74 Mo. 128. (9) If threats or promises, however slight, are used to induce the confession, then the confession cannot be used against the defendant making same. State v. Brooks, 220 Mo. 74. (10) The presumption is that confessions have been freely made until the contrary appears. State v. Armstrong, 203 Mo. 559; State v. Meyers, 99 Mo. 119; People v. Barker, 60 Mich. 295; Com. v. Culver, 126 Mass. 464; 1 Chitty's Crim. Law, 571; Roscoe's Crim. Ev., 43; 3 Rice, Crim. Ev., sec. 309.

BROWN, J.—Defendant was convicted of murder in the first degree, and appeals from a judgment fixing his punishment at imprisonment for life.

The evidence on the part of the State tends to prove a conspiracy between defendant and three or more other negroes to rob the Missouri Pacific freight office at Kansas City, Missouri, on December 1, 1911. In robbing that office one Albert Underwood, a cashier therein, was murdered. The evidence further tends to prove that Underwood was killed by one Arthur Brown, and that while defendant was not present he was in or near the building where the tragedy occurred, and. that he aided and abetted Arthur Brown in the commission of said crime.

At the trial a signed confession of defendant Powell was admitted over his objections, to which ruling exceptions were duly saved. The admission of this alleged confession, and the refusal of the trial court to permit the defendant to impeach the same by proving that parts of it were untrue, constitute the alleged errors upon which the defendant relies for reversal.

The written confession of defendant introduced in evidence reads as follows:

*Statement taken in the office of Captain E. B. Stone, commanding.*
*State of Missouri, County of Jackson, ss.*

Featherstone Powell, of lawful age, being first duly sworn, upon his oath deposeth and says:

I am twenty-four years old. I was born in Jackson, Tennessee. I live at seven hundred and twenty-six New Jersey Avenue, Kansas City, Kansas. I work at the Missouri Pacific Railway Company in their freight office, as janitor. Thursday, November 30th, as I was passing State line on my way home I met Arthur Brown and Duke at the State line. They wanted to know where I was going and I said I was on my way home. They wanted to know what chance to hold up cashier's department at Missouri Pacific freight house. I told them that they had better know what they were doing, cause it would make it hard on me, as I am janitor in the building and have been there for the last seven years. After this conversation I went home.

The next time I saw Arthur Brown and this man Duke was on Friday afternoon. They were up in the Missouri Pacific local office December 1st, about 5:40 p. m. I was standing in the front of the toilet room door when Arthur Brown came to me and said we are going to pull that job off now that we were talking about the other day. Arthur Brown and Duke had a revolver apiece. Shortly after, Halsey Powell, my brother, came back to the toilet room and when he got to us Arthur Brown and this man Duke says they were going to pull off that job to-night and Halsey said that if you go by mother's to-night, I will give you some of the money. These three men went downstairs immediately after that. Before leaving me to go downstairs they told me to get down in front and as I knew the special agents of the Missouri Pacific I was to watch for them and if I saw any of them coming I was immediately to give the signal. I then took a bucket and broom from the office and came downstairs and went out on the sidewalk at the southeast corner of the building. I taken up my position there to watch for Missouri Pacific special agents just outside

of the front door of the office. My brother, Halsey Powell, and my brother, Cottrel Powell, were both standing at this door. Immediately inside of the office door were the following men known to me as Ossie Brown, Arthur Brown, and the man they called Duke. I was directly outside with the bucket and broom and when I saw everything was clear I told them all right, and then they entered the cashier's department and shortly afterwards I heard a pistol shot, and immediately after the shot was fired Ossie Brown and Halsey and Cottrel came running out of the front door and I went in the hall. I don't know how Arthur Brown or this man Duke left the office. I then went into the freight house and Albert Underwood was lying inside the freight house on the floor and some of the boys picked him up and lays him in the back room in the cashier's office on the table. Last night when the officers asked me if knew who the parties were that pulled off that job I would not tell them. I did not want them to know that my brothers, Halsey or Cottrel or myself had anything to do with it. I make this statement of my own free will, without any threats or promises being made and knowing that it will be used against me, if I am prosecuted.

FEATHERSTONE POWELL.

Witnesses: S. W. Zickafoose, Edward B. Stone, W. H. Boullt, Jas. J. Raftery, C. M. Phillips, J. D. Greenlee.

I make this statement in the presence of Capt. E. B. Stone, Chief of Detectives S. W. Zickafoose, Detectives J. J. Raftery, J. D. Greenlee, W. H. Boullt, Special Agent Missouri Pacific, and C. M. Phillips, Special Officer Missouri Pacific.

FEATHERSTONE POWELL.

Subscribed and sworn to before me, a Notary Public, within and for the above state and county this 4 day of December, 1911.

(Seal)                                    GUY C. COOLEY,
                                              Notary Public.

My commission expires 2/13/12.

Witnesses: S. W. Zickafoose, Edward B. Stone, W. H. Boullt, Jas. J. Raftery, C. M. Phillips, J. D. Greenlee.

The evidence of three witnesses who were in the freight office when the robbery and murder occurred tends to corroborate the defendant's written confession, except that defendant's confession recites that there were five men in the freight office participating in the robbery, while the witnesses for the State saw only three. No one saw defendant at the time of the robbery and murder. He testifies that he was on the

second floor of the building at that time, while his confession recites that he was out in front of the building. As the cause must be reversed because of the admission of improper evidence and the exclusion of proper evidence, a more detailed statement of the facts is unnecessary.

Defendant is a colored man twenty-four years old, and for some years prior to the commission of the crime of which he was convicted was a janitor in the freight office of the Missouri Pacific Railway Company, located on the first floor of a building in Kansas City, Missouri. He was arrested and locked up the day following the robbery, and on the second day was taken to the office of Edward B. Stone, Captain of Police, and questioned by Captain Stone and eight other police officers and detectives regarding his knowledge of and complicity in the robbery and murder.

With one exception the witnesses agree that the interrogation of defendant begun about two p. m. Sunday afternoon and continued until eleven p. m. that night with very slight intermissions. Defendant was interrogated alternately by the nine officers and detectives, and at eleven p. m. consented to confess. His confession, written on a type-writer, was completed and signed between twelve and one a. m. that night.

When offered in evidence this confession was objected to on the ground that it was not voluntarily made, but was the result of intimidation; that it was obtained by placing defendant in such a protracted mental strain as to overcome his will, and by promises made by Captain Stone that it would help him to confess. Defendant, testifying in regard to the confession, states that he was not only accused and questioned for a long time, but was struck on the head and kicked on his private parts by the officers before he consented to make a statement. That the officers told him it would be lighter on him if he confessed. He further testified that two confessions were written at the in-

stance of the officers, and when he signed the first confession he wrote the words "not guilty" following his name; that officer Stone tore up that confession and threw it into a brass cuspidor, and then they obtained the final confession, which was introduced in evidence.

The testimony on the part of the officers who secured the confession is that the defendant was not subjected to any personal abuse or mistreatment. The salient parts of their evidence is as follows:

Special Agent Boullt testified that defendant was .very nervous and excited and wanted to shield himself and his brothers; that it did not require all the time the officers were present to persuade him to make the confession; that they remained with him waiting for another party to be brought in who was accused of the same crime.

S. W. Zickafoose, Chief of Detectives, who was present and participated in securing the confession, stated that defendant did not seem to be excited. That defendant was reluctant to make a statement because he wanted to shield his brothers who were implicated in the crime—that he repeatedly told defendant "that it would be best for him to tell the truth, that he knew all about it."

Captain Stone, in whose office the confession was obtained, stated that defendant first denied that he knew anything about the robbery; that the officers did not know who had committed said crime until defendant made his confession. That they questioned defendant five or six hours regarding other parties who took part in the robbery, and just before eleven p. m., they questioned him between thirty minutes and an hour regarding his part in the crime, and then he agreed to make the confession. A typewriter was procured, and the statement was completed and signed about one o'clock next morning. Witness Stone stated that he dictated the first two or three lines of the confession, and the defendant dictated the balance,

and it was sworn to the next morning. Captain Stone, upon cross-examination, further stated that he had to draw the confession from defendant piece by piece; that he questioned him at length and severely about other parties implicated in the crime. Asked if he had to "worm" the confession out of defendant, witness Stone replied: "I had to work hard." Asked whether he told defendant that it would help him to tell the truth, Captain Stone replied that he did so several times. He also stated that defendant did not seem to be nervous, but that "he appeared to be tired and worn out from the strain."

It will be observed that the written confession implicates defendant's brothers, Halsey and Cottrell Powell, as participating in the robbery and murder committed at the Missouri Pacific freight office. According to that confession Halsey Powell was present and told defendant just before the robbery to come over to his mother's house that night and get some of the money (which they were going to secure by the robbery). At the trial defendant attempted to prove by said Halsey Powell, and by three white employees of the Union Pacific Railroad Company, that said Halsey Powell was a mile and a quarter distant from the scene of the robbery and murder just one minute before those crimes were committed, delivering some way-bills to the yardmaster and other employees of said Union Pacific Railroad Company, and, therefore, could not have been present at the commission of the crime as recited in defendant's confession. Upon objection by the State this proffered evidence was excluded, to which ruling defendant duly saved his exceptions.

I. We will first consider the admissibility of the written confession. What is necesasry to render a confession involuntary depends, to a large extent, upon the person from whom such confession is obtained. The age, sex, dis-

Confession.

position and past experience of the party must necessarily be considered. [2 Wharton's Criminal Evidence (10 Ed.), p. 1320; 12 Cyc. 464; State v. Brockman, 46 Mo. 566.]

In this case the testimony of defendant that he was struck and kicked seems to be completely overcome by the evidence of the officers that he was not physically abused. We will, therefore, consider the confession from the standpoint of the evidence of the officers, and such other facts as are not in dispute.

The defendant is a young colored man twenty-four years old, who had, apparently, made his living by honest work up to the time of his arrest. There was some evidence that he had been suspected of violating the prohibition laws of the State of Kansas, where he resided, but he had never been arrested upon any charge. He had never worked for himself. Such a man would hardly be expected to possess strong enough will-power to resist *indefinitely* the accusations and interrogations of expert detectives. The testimony of two of these officers is that defendant was reluctant about making a statement because he wanted to shield himself and his brothers, yet his confession does incriminate not only himself but two of his brothers, Halsey and Cottrell Powell. This evidence is some indication that the confession was obtained by a compulsion or through some promise of leniency. The fact that defendant was kept up to a very late hour of the night and vigorously interrogated, and that he appeared to be "tired and worn out from the strain," are circumstances tending to cast discredit on the confession; for if a man be accused, interrogated and browbeaten by those having him in custody until his will is overcome by mental torture, his confession thus obtained is no less involuntary than when obtained by physical punishment. When we add to the facts last recited the evidence of Captain Stone that he repeatedly told defendant that it would "help him to tell

the truth," we are led to believe that the confession was not made willingly.

Of course the effect which the words "it will help you to tell the truth" would have upon the mind of one placed in the position in which defendant stood, would depend somewhat upon the stress or emphasis placed upon those words of Captain Stone, but when all the circumstances are considered we think that the natural effect of such words would be to lead this defendant to believe that he would secure at least partial relief from the charge, by making a confession.

The last paragraph of the confession, to-wit, "I make this statement of my own free will, without any threats or promises being made and knowing that it will be used against me if I am prosecuted," looks rather suspicious. It is highly improbable that such a clause would have been inserted if some hope had not been directly or indirectly held out to defendant that he would not be prosecuted.

The officers testified that defendant dictated all of the confession, except the first two or three lines thereof, but this concluding paragraph is so unusual and so unlike the other language used by defendant in giving his testimony, I am impressed with the idea that it was suggested by some of the officers in an effort to have the defendant brand as voluntary a confession which is not entitled to be so regarded.

The testimony of the officers was by no means harmonious. Captain Stone states that defendant was not excited but "seemed to be tired and worn out from the strain," while Special Agent Boullt says that defendant was very nervous and excited. Witness Boullt further testified that defendant agreed to make a confession long before eleven p. m., but this is at variance with the evidence of the other officers. Perhaps their memories were a little confused as to just what did occur on that occasion.

It is not necessary to discuss the matter at greater length. We are convinced that the written confession was not voluntarily made, and should, therefore, have been excluded by the court. [State v. Thomas, 250 Mo. 189, l. c. 211, and authorities there cited.]

II.  Regarding the exclusion of the evidence tending to prove that parts of the confession were untrue,

**Right to Impeach Confession.** offered by defendant for the purpose of impeaching or throwing discredit upon said confession, we have not found, nor has the Attorney-General cited us to, any law which sustains the ruling of the trial court.

In the case of Jaynes v. People, 44 Colo. 535, the authorities on this point are collated and reviewed at length; and in that case it was expressly held that a confession reciting that defendant procured poison at a certain establishment with which he feloniously poisoned a horse, might be impeached by proof that the establishment where defendant claimed to have obtained the poison never kept or sold the same.

The case of People v. Fox, 3 N. Y. Supp. 359, was very much like the one at bar. In that case the defendant made an affidavit that he and four other parties committed a robbery, and when this affidavit was introduced against him he offered to impeach the same by evidence that the four other men named in the affidavit did not participate in the crime. In holding that this evidence was competent and should have been admitted, the Supreme Court of New York said:

"Now, it is quite correct to say that the confession may be false in every other particular, and yet it may be true that defendant participated in the robbery. But the question here is whether the defendant may not give evidence tending to disprove an alleged fact, of which the people have given proof against him. Certainly, when one side gives evidence tending to prove a fact, the other side may give evidence to the contrary.

The people had given evidence tending to show that these five persons, together, had committed the alleged crime. Could not the defendant show that four of them were not there, and did not commit it, especially since the crime could not have been committed by one alone? If the defendant had made a confession that he alone went to Plank's, and tied him and his boy, and robbed the house, such a confession, under the other testimony, would have received no credit. But he makes a confession of a transaction not improbable on its face. And evidence is offered tending to show that statements in that confession, are not true; and these are such statements, furthermore, that, if they are not true, then the truth of the confession becomes doubtful.''

This decision was affirmed by the N. Y. Court of Appeals, 121 N. Y. 449.

A similar result was reached by the Supreme Court of Pennsylvania in dealing with the same kind of an issue in Commonwealth v. Shaffer, 178 Pa. St. 409, l. c. 415.

The exclusion of evidence tending to prove that Halsey Powell was not at the Missouri Pacific freight office when the robbery and murder were committed, and, therefore, could not have participated therein, was very prejudicial to defendant. Defendant not only confessed that Halsey Powell was present as one of the active participants in that robbery, but that said Halsey Powell had, on that very occasion, requested defendant to come to the home of his mother and receive part of the proceeds of the robbery. This part of the confession was about the only evidence of motive on the part of defendant. Therefore, proof that Halsey Powell was not present and could not have taken part in the crime would have tended to rebut the evidence of motive on the part of defendant, and would also have directly tended to prove that the confession was not voluntarily made; for if defendant did not want to incriminate his brother Halsey (as stated by

the officers), and yet did incriminate him, when the latter was not guilty, this would furnish the highest kind of proof that the confession was not only involuntary, but also unworthy of belief.

For the error of the trial court in admitting the written confession of defendant, and in excluding evidence tending to impeach said confession after it was admitted, its judgment will be reversed and the cause remanded for a new trial. It is so ordered.

*Walker, P. J.,* concurs; *Faris, J.,* not sitting.